UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL WHOOTEN,<br><br>            Defendant. | Case No. 20-cr-10176-PBS |

**GOVERNMENT'S SENTENCING MEMORANDUM**

      After state and federal sentences of 84 months and 140 months for armed robberies, on December 21, 2019, Defendant Paul Whooten decided to commit yet another violent crime. Indeed, just months after his release and after serving the better part of two decades in prison, the defendant walked into a branch of Rockland Trust Bank in Boston carrying what appeared to be an assault rifle, pointing it at the teller, and demanding that she fill a bag with money. Despite a dozen convictions and a criminal history that spans twelve full pages of the presentence report, one thing is crystal-clear: the defendant does not care about the consequences of his actions and has demonstrated no interest in changing his behavior. He should be given a sentence that adequately addresses his recurrent conduct and protects those members of the community for whom he evidently has no regard.

      For reasons outlined below and to be articulated at the sentencing hearing in this case, the government respectfully submits that a sentence of 108 months of incarceration, 36 months of supervised release, and a mandatory special assessment of $100 is appropriate in this case and for this defendant.

**FACTUAL BACKGROUND**

      On December 21, 2019, the defendant entered a branch of Rockland Trust Bank located on Truman Parkway in the Hyde Park neighborhood of Boston. The defendant was wearing an

outfit that, though distinctive, was designed to conceal his identity. It included a long dark coat over a yellow and black reflective jacket with a bright yellow hood, as well as a knit hat, black sunglasses, a mask, and gloves. The defendant was also carrying something that appeared at first glance to be an assault rifle but that later turned out to be a BB gun:



After entering the bank, the defendant approached a teller, pointed the assault-rifle-style gun at her, and demanded that she give him "all of the money." The defendant provided the teller with a bag, and the teller and a coworker filled the bag with cash totaling $13,603. The teller then passed the bag back to the defendant, who dropped some of the money on the floor as he exited the bank. Shortly thereafter, the defendant was observed on the sidewalk, across and down the street from the bank, wearing clothes consistent with those observed during the robbery and holding what appeared to be a rifle in his hand. During a post-*Miranda* interview after his apprehension, when asked which bank was the last he had robbed, the defendant replied, "This one right here."

## DISCUSSION

I. **Sentencing Guidelines Calculation**

Though the government agrees with Probation's calculation of the defendant's offense level, criminal history, and Guidelines Sentencing Range ("GSR"), the government submits that the criminal history calculation in this case – though accurate – grossly underrepresents the defendant's decades of violent crime and disregard for others.  In the end, the CHC calculation leads to a GSR wholly inadequate for this defendant and his conduct.

More specifically, Probation has calculated the defendant's Total Offense Level as 23 and Criminal History Category as IV, resulting in a Guidelines Sentencing Range of 70 to 87 months.  The defendant's criminal history calculation is driven by the omission of multiple felony convictions for larceny and robbery, at least two of which involved the threatened use of a firearm.  Indeed, the only reason more of the defendant's prior convictions do not score for CHC-calculation purposes is that they have "timed out" while the defendant served lengthy sentences for additional armed robberies.[1]  But for the eighteen-plus years the defendant spent in state and federal prison from 1999 to 2019, several additional felonies would count toward the defendant's Criminal History Category.  If his Criminal History Category were calculated to be VI, the defendant would be facing a Guidelines range of 92-115 months, a range substantially closer to what the government believes to be appropriate in this case.

In short, the government submits that an upward variance is necessary to satisfy the sentencing requirements of 18 U.S.C. § 3553(a) and to adequately reflect the defendant's history of violent crime, his lack of shame or remorse for his conduct and impact on his victims, and his obvious lack of interest in changing his behavior.

---

[1] To be clear, the defendant's periods of incarceration have been far from incident-free.  *See, e.g.*, PSR ¶¶ 41-43.  For example, the defendant was charged with and convicted of assault and battery with a dangerous weapon for an incident at the Souza-Baranowski Correctional Center in which he attacked another inmate with a homemade weapon involving a razor attached to a handle.  PSR ¶ 43.

## II.    Whooten's History of Violent Criminal Conduct

The defendant's conduct on December 21, 2019 is particularly troubling given his history of prior armed robberies, including a federal conviction for armed bank robbery before this Court in 2000.  *United States v. Whooten*, 99-cr-10322-PBS (Dec. 15, 2000).  In the incidents leading up to his arrest in that case, the defendant robbed an establishment called Bread & Citrus in Wayland, brandishing what appeared to be a firearm and at one point using a store clerk as a human shield; robbed a Stop & Shop in Pembroke; robbed a Cumberland Farms in East Falmouth, carrying what appeared to be a firearm; robbed a branch of Hyde Park Savings Bank in Dedham with what appeared to be a firearm; and robbed a branch of Eastern Bank in Quincy, again brandishing something that appeared to be a firearm, while announcing "this is a hold up." *See* PSR ¶ 41.  After the defendant waived indictment and pled guilty, the Court imposed a sentence of 140 months, plus three years of supervised release.

About a year after his release, the defendant was arrested for another robbery, of an establishment called Fern Flowers, after which he was charged and convicted of armed robbery in state court and sentenced to seven years of incarceration.  *Commonwealth v. Whooten*, Case No. 1184CR11069 (Suffolk Co. Sup. Ct. Mar. 15, 2013).  This Court separately found that the defendant, in committing the new robbery, had violated the terms of his federal supervised release and imposed a one-year sentence to run concurrent to his state sentence.  At his Final Revocation Hearing, the Court observed, "[A]s I'm remembering the old case with that series of armed bank robberies, he essentially did the same thing again to the woman in the florist shop, not to mention other violent incidents.  I mean, I really remember him as a violent person."  *United States v. Whooten*, 00-cr-10274-PBS, Dkt. No. 39 at 16:18.

The defendant's string of armed robbery convictions represents only a portion of his criminal history, the balance of which is detailed further in the PSR.  Taken together, the defendant's long and violent criminal history demonstrates that, despite significant sentences and subsequent supervision, his criminal conduct has not abated.  A significant sentence is therefore

necessary to at least attempt a measure of deterrence, while importantly affording protection for the community at least for the period during which he is incarcerated.

### III.     Specific Offense Characteristics and the Section 3553(a) Factors

Pursuant to 18 U.S.C. § 3553(a), the Court is required to consider a series of factors when determining an appropriate sentence.  These factors include the nature and circumstances of the offense and the history and characteristics of the defendant, both of which have been addressed in the PSR and in this memo.  Section 3553(a) also mandates that the sentence reflect the seriousness of the offense to, among other things, promote respect for the law, provide just punishment, adequately deter criminal conduct, and protect the public from further crimes of the defendant.  Here, virtually every consideration enumerated in § 3553(a) weighs in favor of a longer sentence.

The defendant has been arrested, charged, and convicted of serious criminal conduct on a regular basis for his entire adult life.  In the past 25 years, the only stretches during which he did not get arrested were periods when he was in state or federal prison.  As the defendant has demonstrated time and again, whenever he is not in prison, he is out in the world committing serious, violent crimes.  Here, though the weapon used to commit the crime turned out to be a BB gun, bank employees watched the defendant in horror as he walked in and pointed what, at the time at least, they had to have perceived was an assault rifle.  His conduct shocks the conscience and cries out for a sentence commensurate with his behavior.

When it comes to specific deterrence, it may be the case that this defendant is truly undeterrable.  To date, at least, he has shown an intractable unwillingness to change his behavior.  So, the purpose of sentencing shifts to promotion of respect for the law, providing just punishment, general deterrence, and – importantly here – protecting the public from further crimes of the defendant.

A repeat offender (indeed, a Career Offender had his prior armed robberies qualified) cannot be given unlimited chances.  In light of this defendant's litany of larceny and robbery convictions through the 1990s and armed robbery convictions resulting in 84-month and 140-

month sentences in the early 2000s, the Court should be sending a message that this type of conduct will not be condoned, that the laws prohibiting people from committing armed robberies must be respected, and that just punishment is a critical precept of our criminal justice system. Moreover, the defendant has ostensibly proven that the only way to protect the community from his conduct is to ensure that he does not have access to the community.

The government submits that there is a colorable argument that the *starting point* in thinking about a sentence for the instant offense is the 140-month sentence previously imposed by this Court – even after that sentence, the defendant went out and committed another armed robbery, was sentenced to and served another lengthy sentence, and then went out and committed the instant offense. As discussed above, the defendant's Guidelines range is 70-87 months *only* because the bulk of his criminal history timed out while he was in prison.

To be clear, the government understands that the defendant has faced a multitude of hardships in the course of his life, including with respect to addiction and mental health. During his recent period of imprisonment, especially within the past two months, he appears to be demonstrating an interest in getting on the right track and hopefully will continue to benefit from his new diagnosis and treatment plan.

At bottom, the government submits that there is a sentence below 140 months but above the Guidelines range that makes sense for this defendant, particularly given his age and with the hope that his mental health issues are being, and will continue to be, adequately treated. The government therefore requests that the Court vary upwards from the GSR and impose a sentence of 108 months of incarceration.

**CONCLUSION**

For all of the foregoing reasons, the government respectfully recommends that the Court impose a sentence of 108 months of imprisonment, three years of supervised release, and the

mandatory special assessment of $100. Such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offenses and the goals of sentencing.

                                                         Respectfully Submitted,

                                                         JOSHUA S. LEVY
                                                         Acting United States Attorney

Date:  June 20, 2023                     By:    */s/ Adam W. Deitch*
                                                             Adam W. Deitch
                                                             Assistant United States Attorney
                                                             United States Attorney's Office
                                                             One Courthouse Way
                                                             Boston, MA 02210
                                                             617-748-3123

## CERTIFICATE OF SERVICE

     Undersigned counsel certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

                                                         */s/ Adam W. Deitch*
                                                         Adam W. Deitch
                                                         Assistant United States Attorney

Dated:  June 20, 2023